A93A0083. HILDEBRAND v. THE STATE.
(433 SE2d 443)

POPE, Chief Judge.

Eric Hildebrand and three companions were charged with burglary and criminal damage to property in the second degree for breaking and entering a storage facility belonging to the Sunset Hills Country Club in Carroll County and removing six golf carts belonging to the club and one club member, which they drove over the golf course and grounds, running through small trees and shrubbery and into one another, causing damage in excess of $500. The other three men entered pleas of guilty. Hildebrand pled not guilty, was tried by a jury which convicted him on both counts, and was sentenced to five years of probation on each count, a fine and restitution. He appeals from the denial of his motion for directed verdict of acquittal on the charge of criminal damage to property, from the denial of his motion to strike certain evidence and because of allegedly prejudicial and improper argument made by the prosecutor.

1. The evidence showed that on September 2, 1991, a group of young men had been drinking together in an apartment near the golf club. Four of them, including defendant, decided to walk over to the club where they broke in and removed three golf carts from the storage area. Defendant did not break in or enter the storage building, but he rode on one of the carts as a passenger after it was removed and remained on it during the joyride around the golf course. He testified that he did not jump off when the drivers of the carts began destroying club property because they were going about 30 or 35 mph and he did not want to get hurt. After two of the carts were driven into a lake, all four men returned to the friend's apartment. The three drivers later returned to the golf course, removed two more carts from the storage area and participated in another destructive joyride, but defendant refused to accompany them.

OCGA § 16-7-23 (a) (1) provides that "[a] person commits the offense of criminal damage to property in the second degree when he . . . [i]ntentionally damages any property of another person without his consent and the damage thereto exceeds $500." Defendant con-

tends that he was entitled to a directed verdict of acquittal because the prosecutor did not introduce any evidence as to the amount of alleged damage done by him to any property, and did not delineate what damage was done on the first trip and what was done on the return trip when defendant was not present. He also complains that while the State relied upon the testimony of the individual whose privately owned cart was harmed to prove the $500 in damage, he was not indicted for causing damage to the privately owned property, and thus the State totally failed to establish an essential element to prove the charge of criminal damage to property in the second degree. We agree.

The only evidence presented by the State involving the amount of damage incurred by the golf club was from the chairman of the golf club's board of directors. He testified that damage had occurred "to several of our . . . golf carts which had been purchased I think just six months prior to the occasion, plus the private cart of a Mr. Madden, plus damage to the building where [they] are stored or two storage facilities. One storage facility the door was kicked in and so forth. . . . There was some additional damage when they were driving into trees, shrubs and so forth." When asked to tell the jury the amount of damage incurred, this witness replied: "There were several figures, and I'd have to refamiliarize myself exactly with it, and I heard them over time. At least four or five thousand dollars worth of damage to the carts that the club owned, excluding the damage to the private cart. And then I can't recall the damage to the other property and so forth. That's the best of my memory."

" 'The testimony of the owner of the property as to his opinion of the value of the property, without giving his reasons therefor, is inadmissible in evidence as it has no probative value. (Cits.)' [Cit.] However, when the witness pays the monetary amount necessary to make his property whole again, he thereafter is not stating his opinion as to the value, but is stating a fact. [Cit.]" *Holbrook v. State*, 168 Ga. App. 380, 381 (1) (308 SE2d 869) (1983). Here the State offered no proof of any amounts paid for repair of the property damaged and presented no photographs depicting the property damaged, as was done in *Holbrook*, so there was no competent evidence from which the jury could determine that the value of the damage for which defendant was responsible was in excess of $500, an essential element of the indicted crime. See also *Terry v. State*, 195 Ga. App. 505 (1) (394 SE2d 132) (1990). Therefore, the trial court erred in denying defendant's motion for directed verdict of acquittal on this charge. *Watkins v. State*, 191 Ga. App. 325 (1) (382 SE2d 107) (1989); *Porter v. State*, 163 Ga. App. 511 (1) (295 SE2d 179) (1982).

2. Our reversal of the conviction of criminal damage to property in the second degree renders moot defendant's objection concerning

admission of evidence as to the amount of damage done to the privately owned golf cart.

3. Defendant contends that the prosecutor made several improper and prejudicial statements during closing argument to which objection was made, and that it was reversible error for the trial court to refuse to give curative instructions to the jury.

(a) Defendant first asserts that the prosecuting attorney improperly and falsely accused him of being "drunk [and] having a good time like the rest of them," because there was no evidence that he was drunk. There was evidence, however, that all four of the participants had been drinking; some of them admitted they were inebriated and defendant acknowledged that he had been drinking with his friends from 10:00 p.m. until about 2:00 or 3:00 a.m. and had consumed "about two or three" beers. " ' "What the law forbids is the introduction [of evidence] into a case, by way of argument, of facts not in the record and calculated to prejudice the accused." (Cit.) "While counsel should not be permitted in argument. to state facts which are not in evidence, it is permissible to draw deductions from the evidence; and the fact that the deductions may be illogical, unreasonable, or even absurd, is matter for reply by adverse counsel, and not for rebuke by the court." (Cit.)' [Cit.]" *Murphy v. State*, 203 Ga. App. 152, 154 (2) (416 SE2d 376) (1992).

(b) Defendant further asserts that the prosecutor was allowed to impermissibly express her personal opinion about his alleged guilt by stating to the jury: "He didn't tell you the truth. You can do what you want. You are the conscience of the community. If you want to believe Mr. Hildebrand, if you want to believe his story and if you want to disregard all the State's evidence, you have the right to do that. You took an oath to do what you think is right. And if you feel he's not guilty, y'all go back there and find him not guilty. But it'll be the wrong decision. I'm telling you that. I am asking you to find him guilty because he's guilty. He's honestly guilty." Defendant maintains that by so stating the prosecutor improperly interjected the authority of her office into this argument and led the jury to believe that she had information unavailable to them, and it was error for the trial court to fail to instruct the jury to disregard her statement of personal opinion. The trial court ruled that while this was a good point, he had not heard her state an opinion.

"Although the prosecuting attorney is prohibited from stating her personal opinion, she may make permissible inferences from the evidence. [Cit.]" *Pittman v. State*, 172 Ga. App. 22, 23 (2) (a) (322 SE2d 71) (1984). Directory Rule 7-106 (C) (3) of the Canons of Ethics of the State Bar of Georgia, the only authority to which defendant refers, is not applicable as it simply states that a lawyer appearing in her professional capacity before a tribunal shall not assert her "personal

knowledge of the facts in issue, except when testifying as a witness." Section 2, State Bar of Ga. Handbook, p. 68. Defendant made no objection that the prosecutor was asserting personal knowledge of any facts in issue and, absent citation to any legal authority holding that an expression of the State's belief in the guilt of the accused on trial is impermissibly prejudicial, we are not persuaded by defendant's conjectural arguments. Indeed, we do not comprehend how the jury could perceive that the prosecutor would think otherwise.

Regardless of how the role of counsel for the State is characterized, the prosecuting attorney "is first and foremost an advocate who is attempting to persuade the jury to return a guilty verdict rather than an acquittal." *Jones v. State*, 198 Ga. App. 264, 265 (401 SE2d 299) (1990). "Moreover, the State may argue to the jury the necessity for enforcement of the law and may impress on the jury, with considerable latitude in imagery and illustration, its responsibility in this regard. Therefore, the prosecutor's argument was not improper." (Citations and punctuation omitted.) *Bowen v. State*, 203 Ga. App. 371, 374 (5) (417 SE2d 18) (1992).

(c) Finally, defendant complains that after it had been stipulated that the prosecutor would allude to only three carts having been taken from the storage facility in her closing argument, she blatantly breached the stipulation and argued that five carts were taken while the defendant was at the scene. Defendant argued at trial that he was an innocent bystander because only three carts were removed during the first excursion to the golf club, whereas had he been involved in the burglary he would have gotten one for himself. He protests that since his closing argument had already been made, this tactic functionally deprived him of a closing argument premised upon his primary defense to the burglary charge. Defense counsel sought to have the trial court correct the misstatement by telling the jury that the evidence showed only three golf carts were taken out on the first trip. The judge stated he could not make such a correction without commenting on the evidence, which he was not allowed to do; and he would not inform the jury what the evidence was, as that was the job of the attorneys in closing arguments, nor would he talk about the evidence in terms of telling the jury what they had to find. Defense counsel commented that this ruling was "unfair," which the court noted for the record, but sought no further curative action and did not move for a mistrial.

We do not approve of a prosecuting attorney stipulating to a certain set of facts and surprising the defense by arguing another. However, " ' "the trial court has the right and duty to govern the scope of argument by counsel both prior to and after the presentation of evidence. The proper range of comment by counsel is a matter within the discretion of the trial court." (Cit.)' [Cit.] ' "This court will not

disturb a court's ruling on a [request for curative instructions] in the absence of a manifest abuse of discretion, and a mistrial is essential to preserve a defendant's right to a fair trial. (Cit.)" (Cit.)' [Cit.]" *Bowen*, supra. We find no manifest abuse of discretion in the trial court's refusal to give the curative instructions sought here, and no motion for mistrial was made.

4. Defendant asked for a jury instruction that a person's approval of other persons' unlawful conduct does not make the person a party to the crime, and enumerates as error the trial court's refusal to give his requested charge. The court overruled defendant's objection on the ground that the instructions given adequately covered this principle, although not in the specific language requested. We agree, and find no error. *Jenkins v. State*, 201 Ga. App. 395 (2) (411 SE2d 122) (1991).

"Under OCGA § 16-2-20 (a) every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime. One is concerned in the commission of a crime where the person either directly commits, intentionally causes another to commit, intentionally aids or abets the commission of, or intentionally advises or otherwise encourages another to commit the crime. While mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." (Citations and punctuation omitted.) *Bailey v. State*, 203 Ga. App. 133, 135 (1) (416 SE2d 151) (1992). The charge given by the trial court included substantially the same language approved in *Bailey.*

"If the defendant had knowledge of the intended crime and shared in the criminal intent of the principal actor[s], he is an aider and abettor. Hence, if the defendant was at the scene and did not disapprove or oppose the commission of the offense, a trier of fact may consider such conduct in connection with prior knowledge and would be authorized to conclude the defendant assented to the commission of the offense, that he lent his approval to it, thereby aiding and abetting the commission of the crime." (Citations, punctuation and emphasis omitted.) *McWhorter v. State*, 198 Ga. App. 493 (1) (402 SE2d 60) (1991). The evidence was undisputed that defendant arrived with three friends who removed the carts, and that he rode around in one of the carts with them. Moreover, he made no attempt to get off the cart or leave the scene of the crime, and did nothing to deter the burglary or the destruction of property. The defendant's own testimony, when considered with that of the participants who pled guilty to the burglary, amply supports the jury's conclusion that he was a party to the crime and guilty of burglary beyond a reasona-

ble doubt under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See *Lewis v. State*, 199 Ga. App. 97 (1) (403 SE2d 814) (1991).

*Judgment affirmed in part and reversed in part. Birdsong, P. J., and Andrews, J., concur.*

DECIDED JULY 14, 1993.

*Gary P. Bunch*, for appellant.

*Peter J. Skandalakis*, District Attorney, *Lynda S. Engel*, Assistant District Attorney, for appellee.